(50 App. Div. 547.)

STEVENS v. SESSA.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

1. ASSIGNMENT OF RENTS—WRITTEN CONTRACT—EFFECT.

The testator of plaintiff's ward executed a written agreement with defendant whereby defendant was to collect the rents of certain properties devised to the ward and apply them in payment of the testator's indebtedness to him. *Held*, that the agreement amounted to an assignment of the leases under which the rents were collected and constituted a good defense to plaintiff's action as guardian to recover the rents.

2. SAME—AGENCY COUPLED WITH INTEREST—REVOCATION—DEATH OF PRINCIPAL.

The testator of plaintiff's ward executed a written agreement with defendant, who was testator's agent, whereby defendant was to collect the rents of certain properties devised to the ward, and apply them in payment of the testator's indebtedness to him. *Held*, that the agreement coupled to defendant's existing agency an interest which prevented its revocation by the testator's death.

Appeal from judgment on report of referee.

Action by Morris Putnam Stevens, as general guardian of Bertha D. Kane, an infant, against Anthony Sessa. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Morris Putnam Stevens, for appellant.

Paul E. De Fere, for respondent.

WOODWARD, J. Morris Putnam Stevens, as general guardian of Bertha D. Kane, brings this action for the purpose of recovering certain rentals of land specifically devised by the late Edward Kane to Bertha D. Kane, the ward of the plaintiff. Edward Kane died on the 11th day of December, 1897, and his will was admitted to probate on the 3d day of May, 1898. It is conceded that, in the absence of a special defense, the plaintiff would be entitled to recover the amount demanded, which is, by agreement of the parties, stipulated at $2,-070.10. The defendant, however, sets up an affirmative defense, and alleges that on or about the 15th day of April, 1897, the testator, Edward Kane, borrowed $2,000 from the defendant, who is an Italian banker, and who had charge of the property and collected the rents thereof as the agent of the testator, and that the following written agreement, which appears in evidence, was made and delivered, under the provisions of which the moneys in controversy were collected:

"This is to certify that Anthony Sessa has agreed to make unto Mr. Edward Kane a loan of two thousand dollars, of which he has already advanced the

sum of fourteen hundred dollars; the balance to be advanced in June, 1897. As security for the payment of the said claim of two thousand dollars, Mr. Edward Kane hereby assigns and transfers to Anthony Sessa his claim against the business of E. Kane & Co., amounting to two thousand dollars; and if the said sum of two thousand dollars is not paid on or about February 1st, 1898, then Mr. Anthony Sessa shall be entitled to collect and keep the rent of the houses known as 28 to 36 Union street and No. 19 President street, Brooklyn, and to apply the same to the said loan of two thousand dollars until the same shall be paid in full. Interest shall begin to run from February 1st, 1898.

"Edward Kane."

There is no doubt that, were Edward Kane the plaintiff in this action, this court would refuse to aid him in the collection of this claim, whatever may be the exact legal effect of the instrument executed between him and the defendant. At the time the money was borrowed, Anthony Sessa was the agent of the testator, and the custodian of the leases under which the properties mentioned were rented. By the execution of the contract for the repayment of the sum of $2,000, in the event of its nonpayment at a given time, out of the rents of the designated property, there was a transfer of the leases upon these several properties to the defendant, which gave him the right to collect and retain the rentals under the terms of the contract. There is nothing in the record to show that any new lease was executed by the devisee after the death of the devisor, and it may be assumed, therefore, that the rents which are claimed by the plaintiff were all collected under the assigned leases.

If, however, the paper given by the plaintiff's testator be regarded merely as an executory contract, fully performed on the part of the defendant, it is sufficient to constitute a defense to this action, under the facts and circumstances developed by the evidence. The defendant was the agent of plaintiff's testator, and, if the agency was a mere naked power to rent the property of the testator, it would terminate instantly upon the death of the grantor. Trust Co. v. Wilson, 137 N. Y. 284, 34 N. E. 784. But, where the power is coupled with an interest in the subject-matter of the agency, the agent may execute the authority, as his rights survive the death of the principal. 1 Am. & Eng. Enc. Law, 1223; Story, Ag. 489; Knapp v. Alvord, 10 Paige, 205; Houghtaling v. Marvin, 7 Barb. 412. The authorities are cited and reviewed at length in the case of Terwilliger v. Railroad Co., 149 N. Y. 86, 43 N. E. 432; and the learned court reaches a conclusion in harmony with the view which we take of this case. In the case at bar the defendant had loaned to the plaintiff's testator the sum of $2,000, and the written contract gave the defendant a power to "collect and keep the rent of the houses" described in the paper. This agency on the part of the defendant for the rental of these buildings was thus coupled with an interest. The testator could not revoke that agency, or the power conferred by his contract, until the debt was paid; nor would his death, under the circumstances, operate to end the agency or the power. "This general rule," says Chief Justice Marshall in Hunt v. Rousmanier's Adm'rs, 8 Wheat. 174, 203, 5 L. Ed. 589, 597, "that a power ceases with the life of the person giving it, admits of one exception. If a power be coupled with an 'interest,' it survives the person giving it, and may be executed after his

death.   As this proposition is laid down too positively in the books
to be controverted, it becomes necessary to inquire what is meant
by the expression 'a power coupled with an interest.'   Is it an interest
in the subject on which the power is to be exercised, or is it an inter-
est in that which is produced by the exercise of the power?   We hold
it to be clear that the interest which can protect a power after the
death of a person who creates it must be an interest in the thing
itself.   *   *   *   'A power coupled with an interest' is a power which
accompanies, or is connected with, an interest.   The power and the
interest are united in the same person."   The defendant in the case
at bar had an interest or estate in the rentals of the buildings de-
scribed in the contract.   He also had the power, given him by the
testator, to "collect and keep the rents" in payment of the testator's
obligation.   He is thus within the rule laid down by the great chief
justice, and the authorities which we have cited; Knapp v. Alvord,
supra, being specially in point, as is also the general reasoning of
Houghtaling v. Marvin, supra.   That plaintiff's ward took the legal
title to the real estate now under consideration immediately upon the
death of her testator is undoubtedly true, but the defendant had an
interest in the rentals to be collected from that property, and he
had an irrevocable power to collect and appropriate to his own use
the money necessary to reimburse him for that which he had loaned
to the testator, and that power did not come to an end with the death
of the grantor.   It could only terminate when the terms of the power
had been complied with, and the defendant had been paid that which
was his due.   The judgment appealed from should be affirmed.

Judgment affirmed, with costs.   All concur.